IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>HUBERT IVAN UGARTE, et. al.,<br><br>  Defendant. | **MEMORANDUM DECISION DENYING MOTION FOR RELEASE (DOC. NO. 15)**<br><br>Case No. 2:20-MJ-452<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is a Motion for Release (Doc. No. 15) filed by the defendant, Hubert Ivan Ugarte.  In his motion, Mr. Ugarte argues the delay in presentment after his arrest on June 25, 2020 prejudices him and constitutes a violation of his due process rights and his rights under the Fifth and Sixth Amendments of the United States Constitution.  (Mot. for Release 1, 2 & 4, Doc. No. 15.)  He argues the remedy for this should be his release from custody.  (*Id.* at 4.)  The government responded to Mr. Ugarte's motion on July 8, 2020 (Doc. No. 22), arguing that under the circumstances, there is no unnecessary delay under Rule 5 and that an individualized analysis must be made under the Bail Reform Act before release.  *See* Fed. R. Crim. P. 5(a); 18 U.S.C. § 3142.  After careful review, the court finds no violation of Rule 5 of the Federal Rules of Criminal Procedure and finds the remedy requested by Mr. Ugarte improper under the circumstances.  Accordingly, the court DENIES Mr. Ugarte's motion (Doc. No. 15).

## BACKGROUND

Mr. Ugarte was charged by Complaint on June 11, 2020.  (*See* Doc. No. 1.)  He was charged with Conspiracy in violation of 18 U.S.C. § 371; Removal of Property to Prevent Seizure in violation of 18 U.S.C. § 2232; Loan Application Fraud in violation of 18 U.S.C.

§ 1014; Wire Fraud in violation of 18 U.S.C. § 1343; and Money Laundering in violation of 18 U.S.C. § 1957.  (Complaint 1–4, Doc. No. 1.)  Mr. Ugarte was arrested on June 25, 2020.  (Doc. No. 7.)  He was scheduled to appear before Magistrate Judge Jared C. Bennett on June 29, 2020, for an initial appearance.  (*See* Doc. No. 4.)  However, on June 26, 2020, the court vacated this hearing, (Doc. No. 5), and rescheduled it for July 14, 2020 before the undersigned, (Doc. No. 6).  Although the reason for this change is unclear from the docket, the government explains that on June 25, 2020, Mr. Ugarte was placed in quarantine for a period of fourteen days at his place of detention, the Salt Lake County Metro Jail (the " Metro Jail").  (Opp'n to Mot. for Release 4, Doc. No. 22.)

Mr. Ugarte is requesting immediate release due to the delay between his arrest and presentment.  (*See* Mot. for Release 1, Doc. No. 15.)  After filing this motion, Mr. Ugarte requested a hearing via an email to the court.  In the email, Mr. Ugarte's counsel indicated Mr. Ugarte would waive his right to appear at any such hearing.  The court denied this request on the grounds that Mr. Ugarte failed to submit a signed waiver of appearance with the request and because it did not appear a hearing would clarify any of the issues raised.  (Doc. No. 21.)  The court also ordered the government to file a responsive brief.  (*Id.*)  One July 8, 2020, the government did so, arguing that releasing Mr. Ugarte would burden the United States Probation Office, any delay in presentment is not unnecessary, and an individualized analysis of the factors in 18 U.S.C. § 3142(g) favor the detention of Mr. Ugarte.  (Opp'n to Mot. to Release 6–7 & 8, Doc. No. 22.)

## ANALYSIS

### A. Reason for Delay

Mr. Ugarte's initial appearance has been delayed due to the fact that he is in

quarantine at his place of detention. Global health concerns related to the COVID-19 pandemic have impacted the court's daily operations as well as those of the criminal justice system as a whole. Some of these impacts are reflected in this court's general orders.

To cite just a few, on March 12, 2020, Chief District Judge Robert J. Shelby outlined the court's approach to this pandemic in General Order 20-008, by limiting entry into the courthouse. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was signed into law. Pub. L. No. 116-136, H.R. 748 § 15002(b)(1), 116th Cong. (2020). Among other things, the CARES Act authorizes the use of video and telephone hearings in criminal cases under certain circumstances during the COVID-19 emergency. Consistent with the CARES Act, the court issued General Order 20-011, authorizing the use of video and telephone conferencing in criminal matters to help mitigate against the risk of contagion from in-person hearings. On April 28, 2020, General Order 20-012 was entered, continuing all civil and criminal trials through June 15, 2020. On June 15, 2020, the court issued General Order 20-017, continuing all trial-related deadlines in criminal cases until August 1, 2020 and further authorizing criminal hearings to be conducted via electronic means.

The court has been working hard to balance the risks caused by this unprecedented virus with the constitutional rights of defendants. At the same time, the local jails at which federal criminal defendants are housed have been tasked with changing their processes while trying to keep inmates safe. While the court is unaware of the internal processes of the jails, the court is aware due to the spike in COVID-19 cases in Utah,[1] the Metro Jail is quarantining

---

[1] *See* Utah Dep't of Health, Overview of COVID-19 Surveillance, https://coronavirus.utah.gov/case-counts/.

inmates for fourteen days immediately upon being booked into the facility. And during this quarantine period, the Metro Jail is disallowing any court hearings, even if held electronically.

It is this fourteen-day quarantine-related delay that makes up the bulk of the nineteen-day delay between Mr. Ugarte's arrest and his planned presentment. Fourteen days from June 25, 2020 is July 9, 2020. Thus, the earliest day the Metro Jail would allow Mr. Ugarte to participate in a video or telephone hearing would be July 10, 2020. Mr. Ugarte's initial appearance is set for July 14, 2020, four days after this. This additional four-day delay is due to the limited availability of video and telephone hearing slots at the Metro Jail.

### B. Reasonableness and Necessity of Delay

Although Mr. Ugarte's motion only refers to Rule 5 of the Federal Rules of Criminal procedure in a footnote, the presentment requirement in Rule 5 governs his situation. *See* Fed. R. Crim P. 5(a)(1)(A). This provision mandates that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." (*Id.*) The court interprets Mr. Ugarte's motion as a contention that the nineteen-day delay between his arrest and his presentment before a federal magistrate judge is "unnecessary."

The primary purposes of the presentment requirement are to "prevent secret detention" and to "inform a suspect of the charges against him." *Corley v. United States*, 556 U.S. 303, 306 (2009). When faced with a Rule 5(a) challenge, it is appropriate to address the reasons for the delay, whether the delay was unreasonable or unnecessary, whether the defendant was prejudiced by the delay, and if so, whether the suppression of evidence or another remedy is appropriate. *See generally United States v. Jernigan*, 582 F.2d 1211, 1214 (9th Cir. 1978). The burden of proving a violation of Rule 5(a) is on the defendant. *United States v. Halbert*, 436 F.2d 1226, 1230 (9th Cir. 1970).

4

Courts have held that administrative delays due to the unavailability of government personnel and judges necessary for the arraignment process are reasonable and, therefore, do not violate the prompt-presentment requirement of Rule 5(a).  *See United States v. Phommaseng*, No. 15-20006-JAR, 2015 U.S. Dist. LEXIS 139114, at *34–35 (D. Kan., Oct. 12, 2015) (unpublished) (outlining types of delays in presentment generally found acceptable under the *McNabb-Mallory* rule and citing *United States v. Boche-Perez*, 755 F.3d 327, 336–38 (5th Cir. 2014)).

The delay in Mr. Ugarte's case is caused by the Metro Jail's administrative processes for controlling the spread of COVID-19 in its facility.  Although Mr. Ugarte has outlined the prejudice he believes he will suffer due to this delay, he has presented no evidence the delay was motivated by anything other than an administrative and health concern by the Metro Jail.  For example, Mr. Ugarte has presented no evidence the delay was intentionally caused by the government's attempt to gather evidence to justify the arrest, by any ill will, by a desire to extract a confession, or just for delay's sake.  *See Corley*, 556 U.S. at 320 (indicating that Rule 5(a) is intended to guard against unlawful arrest, custodial overreach, and government coercion).

### C. Requested Remedy

As a remedy for this delay, Mr. Ugarte requests immediate release.  However, he provides no authority showing this remedy is appropriate for violations of the presentment requirement.  And the court cannot independently find any authority permitting it to release a defendant as a sanction for a violation of Rule 5.  As the government pointed out, the question of detention or release is an individualized determination to be made under the Bail Reform Act, 18 U.S.C. § 3142.

The only remedy the court can identify for a Rule 5(a)(1)(A) violation is the suppression of evidence obtained as a result of the violation.[2] *See United States v. Dyer*, 325 F.3d 464, 470 n.2 (3d Cir. 2003); *United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973); *see also United States v. Means*, 252 Fed. Appx 830, 834 (9th Cir. 2007) (unpublished) (finding defendant failed to state a cognizable Rule 5(a) claim where he failed to show prejudice by way of unlawfully obtained evidence, during the 173-day delay between arrest and presentment). But this remedy appears to have no place here. No evidence has been presented to the court indicating that during the time between Mr. Ugarte's arrest and presentment, Mr. Ugarte was interrogated in any manner or any additional evidence was gathered.

### D.  Prejudicial Effect of Delay

In his motion, Mr. Ugarte alleges the delay in presentment will have a prejudicial snowball effect. He legitimately points out that if he were seen on June 29, 2020, as originally scheduled, he would already have been able to ask for release—and to possibly appeal any denial of release. (Mot. for Release 2, Doc. No. 15.) He makes the same argument with regard to his pending hearing on his alleged pretrial release violation in case number 2:19-CR-393 before this court. (*Id.*) And he contends that in a "normal climate," he would have had his preliminary hearing by the time that, in this climate, he will first be seen by the court. (*Id.* at 2–3.) Mr. Ugarte then argues his time incarcerated should count under the Speedy Trial Act, 18 U.S.C. § 3161.[3] (*Id.* at 4.) While the court understands Mr.

---

[2] In addition, undue delay in bringing someone before a magistrate judge might be a basis for a *Bivens* action seeking monetary damages. *See United States v. Fullerton*, 187 F.3d 587, 591 (6th Cir. 1999).

[3] It is unclear what Mr. Ugarte intends by his reference to the Speedy Trial Act. To the extent Mr. Ugarte believes his rights under the Speedy Trial Act have been violated, the court invites him to file a motion raising this claim.

Ugarte's prejudice arguments, they are insufficient for the court to order Mr. Ugarte's release in the absence of authority allowing for it and in light of the reasons for the delay in this case.

### E. Constitutional Effect

In his motion, Mr. Ugarte also raises constitutional claims, but he does so in a general way, simply citing to the Due Process Clause, the Fifth Amendment, and the Sixth Amendment. (Mot. for Release 4, Doc. No. 15.) Mr. Ugarte's motion contains no legal support for his claims of a constitutional violation and no authority showing release from custody is the remedy for any such violation. The court interprets Mr. Ugarte's reference to the Due Process Clause and to the Fifth Amendment to be one and the same, but is unclear as to the nature of Mr. Ugarte's claim under the Sixth Amendment. Constitutional violations sufficient to violate the Due Process Clause of the Fifth Amendment require a demonstration that the United States has engaged in conduct that violated "fundamental fairness" and shocked a "universal sense of justice." *United States v. Russell*, 411 U.S. 423, 432 (1973); *see also United States v. Lopez*, 577 F.3d 1053, 1068 (9th Cir. 2009) (finding that to dismiss an indictment based upon government misconduct, the conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice"). Under the circumstances, there is no basis to believe the nineteen days Mr. Ugarte will have been detained in jail before seeing a magistrate judge constitutes "outrageous conduct" by the United States. Mr. Ugarte has neglected to even attempt to establish otherwise; his singular citation to his constitutional rights is insufficient.

In sum, the delay in this case is due to the administrative impact of the COVID-19 pandemic, as the Metro Jail and the court adapt and respond to public health and safety guidelines. However, in the present matter, the court cannot find the delay was the result of

7

some improper purpose. And Mr. Ugarte has not offered the court any authority supporting the remedy he seeks. Nonetheless, the court is sensitive to the nineteen-day delay of Mr. Ugarte's presentment. Rule 5(a) lays out an important and significant procedural right and the court does not dismiss lightly Mr. Ugarte's contention that nineteen days is simply too long to wait for an initial appearance.

## **ORDER**

For the reasons stated above, the court finds the delay in Mr. Ugarte's presentment before the court is neither unnecessary nor improper, thus his Motion for Release (Doc. No. 15) is DENIED.

DATED this 10th day of July, 2020.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge