JOHN W. HUBER, United States Attorney (#7226)
KEVIN L. SUNDWALL, Assistant United States Attorney (#6341)
JAMIE Z. THOMAS, Assistant United States Attorney (#9420)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 325-3285

FILED US District Court-UT
NOV 04 '20 PM 03:37

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. HUBERT IVAN UGARTE and LISA BRADSHAW ROWBERRY, Defendants. | Case No. 2:20-cr-214   **DB-JCB** <br><br> SECOND SUPERSEDING INDICTMENT <br><br> Violations: <br><br> 18 U.S.C. § 371, Conspiracy (Count 1); <br> 18 U.S.C. § 1519, Obstruction of Justice (Count 2); <br> 18 U.S.C. § 1512(c)(2), Obstruction of Justice (Count 3); <br> 18 U.S.C. § 1014, Loan Application Fraud (Counts 4-6); <br> 18 U.S.C. § 1343, Wire Fraud (Count 7); <br> 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering (Count 8); <br> 18 U.S.C. § 1957, Money Laundering (Counts 9-11); <br> 18 U.S.C. § 2, Aiding and Abetting |
|---|---|

The Grand Jury charges:

## BACKGROUND

At times relevant to this Second Superseding Indictment:

1.  Defendant Hubert Ivan Ugarte was a resident of Salt Lake County, Utah.

2.  Ugarte owned, operated, and controlled a number of trucking companies including Frisbu Trucking, Inc., in which he was the 100 percent owner and President. The majority of his trucking business was with FedEx Ground as a contract service provider.

3.  Ugarte was a banking customer of U.S. Bank and maintained both personal accounts and business accounts related to his trucking companies with U.S. Bank at its Draper branch.

4.  Defendant Lisa Rowberry was a resident of Utah County and former Assistant Vice President, Branch Manager and In-Store Branch Manager of U.S. Bank. She was assigned to the Draper branch of U.S. Bank.

5.  On January 14, 2020, Rowberry was fired from U.S. Bank for violating the bank's code of ethics policy for using "her personal accounts to conduct business for a customer [Ugarte], whom she had a personal financial interest in."

6.  Shortly after Rowberry was fired, Ugarte hired her to work as the controller of Frisbu, and she was responsible for the financial affairs of Frisbu. Ugarte paid Rowberry an annual salary of approximately $50,000 as his controller of Frisbu.

7.  On January 29, 2020, Ugarte opened a business account for Frisbu Trucking with American First Credit Union, account ending 674-9, and added Rowberry as a joint owner of the account. Ugarte also granted Rowberry a general power of attorney to act on his behalf.

October 2019 Indictment

8.  On October 24, 2019, a federal grand jury in the District of Utah returned an Indictment against Ugarte and others, charging Ugarte with four counts of wire fraud

and six counts of money laundering in the case of *United States v. Hubert Ivan Ugarte*, et al., Case No. 2:19cr393, as a result of a multi-year wire fraud and bribery scheme investigation in which Ugarte bribed employees of the Salt Lake Hub of FedEx Ground to obtain preferential treatment for his trucking companies.

9. As a result of his conduct alleged in the grand jury indictment, FedEx terminated its business relationship with Ugarte and his trucking companies, resulting in the loss of approximately $12 million in annual net profits for Ugarte and his trucking companies.

Protective Insurance Checks

10. On November 14, 2019, the Court issued a seizure warrant authorizing the United States to seize forty-one of Ugarte's semi-tractors. One specific semi-tractor subject to the seizure warrant was a 2016 Freightliner Cascadia, VIN: 3AKJGLD51GSGZ9235 (hereinafter "2016 Freightliner"). The seizure warrant was served upon Ugarte's counsel on November 19, 2019.

11. After the seizure warrant was authorized, agents learned that the 2016 Freightliner had been involved in a traffic accident and an insurance claim had been made to Protective Insurance, the insurance carrier, for the 2016 Freightliner on or before February 13, 2020.

12. On February 11, 2020, FBI sent an email to Rowberry and counsel for Ugarte a copy of the Nevada Highway Patrol Police Report related to the October 2019 accident involving the 2016 Freightliner. Later that same day, Rowberry emailed the FBI, and copied counsel for Ugarte, stating she had sent the information about the 2016

3

Freightliner to Protective Insurance, Ugarte's insurance carrier, and advised that any insurance claim paid for this truck would be turned over to the FBI.

13. On February 25, 2020, the FBI emailed counsel for Ugarte and copied Rowberry and the U.S. Attorney's Office, stating to counsel for Ugarte that Rowberry had previously told the FBI she had filed a claim with Protective Insurance for the 2016 Freightliner and agreed to provide the FBI with the insurance proceeds from this tractor in the event there was any money left after paying for storage fees for the wrecked semi-tractor.

14. On or about April 6, 2020, Protective Insurance Company mailed a check for $60,857.82 to Frisbu. Instead of turning over the check to the FBI as promised, Rowberry deposited the check from Protective Insurance into the account of Frisbu Trucking at KeyBank ending in account number 4358 on April 6, 2020. On April 9, 2020, a stop payment was made on the check and the check was returned to Protective Insurance.

15. On or about April 10, 2020, Protective Insurance Company mailed a second check for $60,857.82 to Frisbu. Instead of turning over the check to the FBI as promised, Rowberry deposited the second check from Protective Insurance into the account of Frisbu Trucking at KeyBank ending in account number 4358 on April 10, 2020. On April 15, 2020, a stop payment was made on the check and the check was returned to Protective Insurance.

PPP Loan Application

16. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"),

was signed into law on Friday March 27, 2020, introducing the Paycheck Protection Program (the "PPP") with an initial $349 billion in funding with the goal of preventing job loss and small businesses failure due to losses caused by the COVID-19 pandemic. The PPP is a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. The Small Business Administration ("SBA") oversees the PPP and forgives loans if all employees are kept on the payroll for eight weeks and the money is used for payroll, rent, mortgage interest, or utilities. Applicants for a PPP loan apply through any SBA (7)(a) lender or through any FDIC insured deposit institution.

17. The loan application documents required to be completed and signed to obtain a PPP loan included the (a) Borrower Application Form, (b) Legal Entity Beneficial Certification Form, (c) Borrower Certification Paycheck Protection Program Form ("Borrower Certification Form"), (d) Eligibility Questionnaire and (e) Promissory Note.

18. The following people are specifically precluded from obtaining loans under the PPP: Individuals who have been convicted of a felony in the past five years; and any applicant or any individual owning 20% or more of the equity of the applicant, who is currently subject to an indictment, criminal information, arraignment, or other formal criminal charges.

19. Question 5 of the Borrower Application Form asks if "the Applicant or any individual owning 20% or more of the equity of the Applicant, is subject to indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction or presently incarcerated, or on probation or parole?"

20. The first question of the Eligibility Questionnaire asks "Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?"

21. The third question of the Eligibility Questionnaire asks "[f]or any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pled guilty; 3) pled nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?"

22. On May 11, 2020, Rowberry affixed the electronic signature of Ugarte to the Borrower Certification document for the PPP loan in which Ugarte agreed with Section D(c) that at least 75% of the loan amount will be used for "Payroll Costs."

**COUNT 1**
**18 U.S.C. § 371**
**(Conspiracy)**

23. The grand jury incorporates by reference paragraphs 1 through 22 as if fully stated herein.

24. On or about April 23 through May 18, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and**
**LISA BRADSHAW ROWBERRY**

defendants herein, and others known or unknown, did knowingly combine, conspire, confederate, and agree, with interdependence between each other, together to commit one or more of the following offenses against the United States, that is:

A. Violation of 18 U.S.C. § 1519 (Obstruction of Justice);

  B. Violation of 18 U.S.C. § 1512(c)(2) (Obstruction of Justice);

  C. Violations of 18 U.S.C. § 1014 (Loan Application Fraud); and

  D. Violations of 18 U.S.C. § 1343 (Wire Fraud).

All in violation of 18 U.S.C. § 371.

## OBJECT OF THE CONSPIRACY

25. The object of the conspiracy was for the defendants to deposit the money from the third insurance check for the wreck of the 2016 Freightliner into the Frisbu bank account so Ugarte could pay Frisbu's payroll for the month of April 2020, and to fraudulently obtain a PPP Loan to pay past due lease payments owed to Kenworth for trucks and to meet Frisbu's ongoing operating expenses for the month of May 2020, including payroll.

## MANNER AND MEANS OF THE CONSPIRACY

26. It was part of the conspiracy that Ugarte and Rowberry agreed that Rowberry would deposit the third Protective Insurance check of $60,857.82 for the 2016 Freightliner into the Frisbu AFCU account ending in 674-9 instead of turning the check over to the FBI.

27. It was also part of the conspiracy that Rowberry would use the money from the third insurance check to pay the payroll expenses of Frisbu for April 20, 2020.

28. It was further part of the conspiracy that Ugarte and Rowberry agreed that Ugarte, as the 100 percent owner and president of Frisbu, would apply for a PPP loan but Rowberry would be the one to prepare the loan application documents and fail to disclose that Ugarte was currently under criminal federal indictment.

29. It was also further part of the conspiracy that Rowberry would electronically affix Ugarte's signature to the loan application documents and submit a copy of his Utah Driver's license together with the loan application.

30. It was further part of the conspiracy that Rowberry would use the loan proceeds to pay the past due truck payments to Kenworth and pay the payroll expenses of Frisbu for May 15, 2020.

31. If was further part of the conspiracy that if Ugarte was accused of any wrongdoing related to the insurance checks or loan application, he would claim he was not personally involved in the day-to-day operations of the business, or in obtaining the insurance checks or the PPP loan proceeds because he was on the road, driving a truck continuously.

## **OVERT ACTS**

32. In furtherance of the conspiracy and it order to accomplish its objectives, within the District of Utah, and elsewhere, the defendants committed, and caused to be committed the following overt acts:

33. Each of the acts and events set forth in paragraphs 1 through 31 of this Second Superseding Indictment individually constitute an overt act in furtherance of the conspiracy. Additional overt acts include the following.

The Third Protective Insurance Check

34. On February 11, 2020, Rowberry emailed the FBI, and copied counsel for Ugarte, stating she had sent the claim information about the 2016 Freightliner to

Protective Insurance and any insurance claim paid for the truck would be turned over to the FBI.

35. On or about April 16, 2020, Frisbu received a third insurance check from Protective Insurance for $60,857.82 dated April 15, 2020 for the 2016 Freightliner.

36. Instead of turning over the third check to the FBI as promised, on April 16, 2020, Rowberry deposited the third $60,857.82 insurance check into Frisbu's AFCU bank account ending in 674-9.

37. Rowberry used the money from the third insurance check to pay for Frisbu's payroll for April 20, 2020, including the payroll of Rowberry.

PPP Loan Application

38. After conferring with Ugarte about obtaining a PPP loan and completing the loan application documentation, Rowberry submitted the loan application documents to two different banks, but each bank rejected the application because they discovered Ugarte was under federal indictment.

39. On April 23, 2020, Rowberry submitted the Eligibility Questionnaire to the Transportation Alliance Bank (TAB) in Ogden, Utah containing the electronic signature of Ugarte in which she and Ugarte conspired to:

a. Answer no to the first question by selecting the circle "No" of the Eligibility Questionnaire, "[a]re you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" The answer was false because Ugarte was under indictment at that time.

9

      b. Answer no to the third question by selecting the circle "No" of the Eligibility Questionnaire, "[f]or any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pled guilty; 3) pled nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?" The answer was false because in 1988, Ugarte entered into a two-year pretrial diversion agreement to a felony drug possession charge.

      40. On April 27, 2020, Rowberry submitted the Borrower Application Form to the TAB in Ogden, Utah containing the electronic signature of Ugarte in which Rowberry and Ugarte conspired to answer no to question 5 of the Borrower Application Form, "Is the Applicant or any individual owning 20% or more of the equity of the Applicant, - subject to indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction or presently incarcerated, or on probation or parole?" The answer was false because Ugarte was under indictment at that time.

      41. On May 11, 2020, Rowberry submitted the Borrower Certification Form to TAB containing the electronic signature of Ugarte certifying that Ugarte would comply with the requirement of Section D(c) and that at least 75% of the loan amount will be used for "Payroll Costs." The answer was false because Ugarte used only approximately 40 percent of the loan proceeds for payroll costs.

      42. On May 14, 2020, TAB wire transferred the $210,000 to Frisbu's AFCU bank account, ending in 674-9.

      43. On May 16, 2020, Rowberry made or caused to be made an electronic by the use of a Visa debit card a payment from the Frisbu's account ending 674-9 to Utility

Trailer Sales of Utah of $13,300 for the lease of trailers.

44. On May 18, 2020, Rowberry made or caused to be made the automatic withdrawal from Frisbu's account ending 674-9 for the payment to Kenworth Sales of $126,965.27 for two past due truck payments for thirteen trucks.

## COUNT 2
## 18 U.S.C. § 1519
### (Obstruction of Justice)

45. The grand jury incorporates by reference paragraphs 1 through 44 as if fully stated herein.

46. On or about November of 2019 to the present, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and**
**LISA BRADSHAW ROWBERRY,**

defendants herein, did knowingly alter, destroy, conceal and cover up a tangible object, to wit, an insurance check from Protective Insurance for $60,857.82 dated April 15, 2020; with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, namely, the Federal Bureau of Investigation and United States Attorney's Office; all in violation of 18 U.S.C. §§ 1519 and 2.

## COUNT 3
## 18 U.S.C. § 1512(c)(2)
### (Obstruction of Justice)

47. The grand jury incorporates by reference paragraphs 1 through 46 as if fully stated herein.

48.     On or about April 16, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, corruptly obstructed, influenced and impeded an official proceeding and attempted to do so; that is, the defendants deposited an insurance check from Protective Insurance for $60,857.82 dated April 15, 2020 into an America First Credit Union account ending in 674-9 held in the name of Frisbu Trucking, which is subject to forfeiture in the case of *United States v. Hubert Ivan Ugarte*, et al., Case No. 2:19cr393; all in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

## COUNT 4
## 18 U.S.C. § 1014
**(Loan Application Fraud)**

49.     The grand jury incorporates by reference paragraphs 1 through 48 as if fully stated herein.

50.     On or about April 23, 2020 in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, made and caused others to make the following false statements in a Eligibility Questionnaire for a PPP loan to TAB, a federally insured financial institution in Ogden, Utah, for the purpose of influencing TAB to lend Frisbu $210,000 (loan number 5177077405) in PPP funds, when the defendants falsely:

   a.   Answered no to the first question by selecting the circle "No" of the Eligibility

Questionnaire, "[a]re you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" when they knew full well that their answer was false because Ugarte was under indictment at that time; and

b. Answered no to the third question by selecting the circle "No" of the Eligibility Questionnaire, "[f]or any criminal offense - other than a minor vehicle violation - have you ever: 1) been convicted; 2) pled guilty; 3) pled nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?" when they knew full well that their answer was false because in 1988, Ugarte entered into a two-year pretrial diversion agreement to a felony drug possession charge.

All in violation of 18 U.S.C. §§ 1014 and 2.

## COUNT 5
## 18 U.S.C. § 1014
## (Loan Application Fraud)

51. The grand jury incorporates by reference paragraphs 1 through 50 as if fully stated herein.

52. On or about April 27, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, made and caused others to make false statements in a Borrower Application form for a PPP loan to TAB, a federally insured financial institution in

13

Ogden, Utah, for the purpose of influencing TAB to lend Frisbu $210,000 (loan number 5177077405) in PPP funds in which the defendants falsely answered no to question 5 of the Borrower Application Form, "Is the Applicant or any individual owning 20% or more of the equity of the Applicant, - subject to indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction or presently incarcerated, or on probation or parole?" when they knew full well that their answer was false because Ugarte was under indictment at that time.

All in violation of 18 U.S.C. §§ 1014 and 2.

## COUNT 6
## 18 U.S.C. § 1014
## (Loan Application Fraud)

53. The grand jury incorporates by reference paragraphs 1 through 52 as if fully stated herein.

54. On or about May 11, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, made and caused others to make false statements in a Borrower Certification Form to TAB, a federally insured financial institution in Ogden, Utah, for the purpose of influencing TAB to lend Frisbu $210,000 (loan number 5177077405) in PPP funds in which the defendants falsely stated that Ugarte agreed that he would comply with the requirement of Section D(c) and that at least 75% of the loan amount will be used for "Payroll Costs," well knowing that at least 66 percent, or $140,265.27, of the $210,000 of

PPP loan proceeds would go to pay Utility Trailer Sales of Utah for the lease of trailers and Kenworth Sales for past due truck payments, leaving only approximately 33 percent for payroll costs.

All in violation of 18 U.S.C. §§ 1014 and 2.

## COUNT 7
## 18 U.S.C. § 1343
### (Wire Fraud)

55.  The grand jury incorporates by reference paragraphs 1 through 54 as if fully stated herein.

56.  On or about May 14, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, did cause to be transmitted in interstate commerce by means of wire communication certain writings, signs and signals; to wit: a $210,000 wire transfer from TAB to Frisbu's AFCU bank account ending in 674-9, of fraudulent loan proceeds; all in violation of 18 U.S.C. §§ 1343 and 2.

/

/

/

## COUNT 8
## 18 U.S.C. § 1956(h)
### (Conspiracy to Commit Money Laundering)

57. The grand jury incorporates by reference paragraphs 1 through 56 as if fully stated herein.

### THE CONSPIRACY

58. From on or about April 16, 2020 through May 18, 2020, within the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

the defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury to commit offenses against the United States those are, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer, transportation, and delivery of money, as well as additional financial transactions in the form of the deposit and subsequent withdrawal of money into and from accounts at financial institutions, electronic transfers between bank accounts, and domestic wire transfers initiated from bank accounts, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. §§ 1957 and 2.

/

/

## COUNT 9
## 18 U.S.C. § 1957
## (Money Laundering)

60. The grand jury incorporates by reference paragraphs 1 through 59 as if fully stated herein.

61. On or about April 16, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and**
**LISA BRADSHAW ROWBERRY,**

defendants herein, did knowingly engage and attempt to engage in a monetary transaction, that is, the deposit of the third insurance check from Protective Insurance of $60,857.82 dated April 15, 2020 into the AFCU account of Frisbu Trucking ending in 674-9, in criminally derived proceeds of a value greater than $10,000 and was derived from specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343 as referenced in *United States v. Hubert Ivan Ugarte*, et al., Case No. 2:19cr393 and incorporated herein; all in violation of 18 U.S.C. §§ 1957 and 2(a) and 2(b).

## COUNT 10
## 18 U.S.C. § 1957
## (Money Laundering)

62. The grand jury incorporates by reference paragraphs 1 through 61 as if fully stated herein.

63. On or about May 16, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and**
**LISA BRADSHAW ROWBERRY,**

defendants herein, did knowingly engage and attempt to engage in a monetary transaction, that is, the payment of $13,300 to Utility Trailers Sales of Utah, in criminally derived proceeds of a value greater than $10,000 and was derived from specified unlawful activity, that is, conspiracy to commit Loan Application Fraud in violation of 18 U.S.C. § 1014 and Wire Fraud in violation of 18 U.S.C. § 1343; all in violation of 18 U.S.C. §§ 1957 and 2(a) and 2(b).

## COUNT 11
## 18 U.S.C. § 1957
## (Money Laundering)

64. The grand jury incorporates by reference paragraphs 1 through 63 as if fully stated herein.

65. On or about May 18, 2020, in the Central Division of the District of Utah and elsewhere,

**HUBERT IVAN UGARTE and
LISA BRADSHAW ROWBERRY,**

defendants herein, did knowingly engage and attempt to engage in a monetary transaction, that is, the payment of $126,965.27 to Kenworth Sales, in criminally derived proceeds of a value greater than $10,000 and was derived from specified unlawful activity, that is, conspiracy to commit Loan Application Fraud in violation of 18 U.S.C. § 1014 and Wire Fraud in violation of 18 U.S.C. § 1343; all in violation of 18 U.S.C. §§ 1957 and 2(a) and 2(b).

/

/

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of any offense violating 18 U.S.C. §§ 1014 and/or 1343, the defendant(s) shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the scheme to defraud. The property to be forfeited includes, but is not limited to:

- $270,857.82;

- A money judgment equal to the value of any property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); or

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in the money laundering conspiracy, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

- $187,823.09;

- A money judgment equal to the value of all property not available for forfeiture as a result of any act or omission of the defendant(s) for one or more of the reasons listed in 21 U.S.C. § 853(p); or

- Substitute property as allowed by 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

JOHN W. HUBER

_____
Cy H. Castle
Kevin L. Sundwall
Jamie Z. Thomas
Assistant U.S. Attorneys